UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES ANTHONY DAVIS,<br>*Petitioner*,<br>v.<br>DWIGHT W. NEVEN, *et al.*,<br>*Respondents*. | Case No. 2:15-cv-01574-RFB-NJK<br><br>**ORDER** |

This habeas matter under 28 U.S.C. § 2254 comes before the Court on respondents' motion to dismiss (ECF No. 50), petitioner's motion to file an exhibit under seal (ECF No. 60), his motion for an evidentiary hearing (ECF No. 62), and an outstanding extension motion (ECF No. 71). In the motion to dismiss, respondents contend that the petition is untimely. Following review, the Court directs an evidentiary hearing.

## *Background*

Petitioner James Davis challenges his Nevada state conviction, pursuant to a guilty plea, of first-degree murder. He is sentenced to life with the possibility of parole after twenty years.

## *Discussion*

### *Provisional Base Calculation of the Federal Limitation Period*

The original judgment of conviction was entered on April 27, 2004. Davis filed, *inter alia*, a timely appeal in proper person. On October 18, 2004, the attorney appointed for the appeal filed a verified notice asserting that Davis consented to a voluntary

dismissal of the appeal and moved for dismissal. The state supreme court dismissed the appeal on December 16, 2004. (ECF Nos. 30-25, 30-33, 31-12, 31-13 & 31-19.)[1]

The time to file a *certiorari* petition expired on Wednesday, March 16, 2005. Under 28 U.S.C. § 2244(d)(1)(A), the one-year federal limitation period, unless tolled or subject to delayed accrual, would begin running after this date.[2]

However, petitioner filed, *inter alia*, a timely state postconviction petition prior to March 16, 2005, on January 21, 2005, before any time had elapsed in the limitation period. Pursuant to 28 U.S.C. § 2244(d)(2), the federal limitation period was statutorily tolled while this petition was pending. Proceedings on the petition were pending before the state district court and thereafter the state supreme court through the issuance of the remittitur concluding the appeal on August 21, 2007. (ECF Nos. 31-20, 32-10, 32-16, & 32-17.)

Accordingly, the one-year limitation period would not begin running instead until after August 21, 2007. Absent any other tolling or delayed accrual, or as discussed *infra,* amended judgments, the federal limitation period would expire one year later on August 21, 2008.

Meanwhile, an amended judgment of conviction was filed on May 11, 2005, following Davis' motion seeking more sentence credit for time served. The amended judgment increased the credit for time served from 123 days in the original judgment to

---

[1] The potential significance of petitioner's other proper person filings from in and around the time of the filing of the notice of appeal is discussed, *infra*, at note 5.

[2] Respondents posit that – absent tolling – the limitation period would expire on March 17, 2006, because "Davis's conviction would have become final after [the March 16, 2005, expiration of] this period [to seek *certiorari* review,] on March 17, 2005." (ECF No. 51, at 6-7.) This is incorrect. The limitation period instead would begin running after March 16, 2005. In that count, March 17, 2005, would be "day *one*" in the count, not "day *zero*." One year after March 16, 2005, is March 16, 2006, *i.e.*, the one-year anniversary of the March 16, 2005, expiration of the time to seek *certiorari* review. This "anniversary method" is the controlling calculation rule under Federal Rule of Civil Procedure 6(a). *See, e.g., Patterson v. Stewart*, 251 F.3d 1243, (9th Cir. 2001); *see also Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (applying the rule specifically to a *certiorari* expiration date). Phrased another way, March 16, 2005, not March 17, 2005, is "the date on which the judgment *became* final by . . . the *expiration* of the time for seeking such review" under § 2244(d)(1)(A). The judgment became final by the expiration of the time for seeking *certiorari* review on March 16, 2005. A similar error perhaps might be avoided in the future simply by following the anniversary method rather than attempting to identify a "date of finality of the judgment" in the abstract. The anniversary method further is the calculation method required by controlling Ninth Circuit law.

2

137 days in the amended judgment. However, the preamble in the May 11, 2005, amended judgment did not refer to Davis' sentence of life imprisonment with the possibility of parole after twenty years. The preamble instead stated, in error, that the court at sentencing "did adjudge the Defendant guilty . . ., suspended the execution of the sentence(s) imposed and granted probation to the Defendant." (ECF Nos. 30-25, 31-25 & 31-31.)

Under *Smith v. Williams*, 871 F.3d 684 (9th Cir. 2017), the federal limitation period would start anew after the June 10, 2005, expiration of time to appeal the amended judgment of conviction -- at least viewing the amended judgment in isolation. Respondents analyze the impact of the May 11, 2005, amended judgment on the calculation of the limitation period without accounting for the then-still-pending proceedings on the timely January 21, 2005, state post-conviction petition. (*See* ECF No. 51, at 7-8.) However, respondents cite no authority holding that the filing of an amended judgment of conviction overrides the directive in § 2244(d)(2) that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." There would appear to be every reason to construe the phrase "with respect to the pertinent judgment" in § 2244(d)(2) as applying successively to an amended judgment of conviction filed during the pendency of timely state post-conviction proceedings. A successful post-conviction proceeding would also impact the amended judgment. Failing to continue to statutorily toll the federal limitation period in this situation would perversely disadvantage a petitioner who was diligently seeking to challenge his conviction, as amended. There is no good reason either legally or equitably to discontinue statutorily tolling of the federal limitation period in this circumstance.

The May 11, 2005, amended judgment of conviction therefore had no practical impact on the calculation of the federal limitation period in this case. Because of the already pending timely state post-conviction proceeding, the one-year limitation period would not begin running until after the issuance of the remittitur on August 21, 2007.

3

Moreover, given that federal limitation period would not even begin running under the foregoing analysis until after August 21, 2007, there is no need for the Court to consider the potential statutory tolling effect of other state court proceedings that were both begun and concluded prior to that date. The Court thus, for example, has no occasion to consider the potential statutory tolling impact of Davis' two original petitions for relief in the state supreme court that were denied prior to this date. (*See* ECF Nos. 31-5, 31-10, 31-11, 31-33, 31-34 & 31-35.)

A second amended judgment of conviction was filed after August 21, 2007, however, on May 9, 2008. The new judgment corrected the error in the earlier amended judgment, while maintaining the 137 days credit for time served. The new judgment deleted the reference to suspension of the sentence with probation and again stated instead that Davis was sentenced to life with the possibility of parole after twenty years. (ECF No. 32-18.) *Smith* and subsequent Ninth Circuit caselaw suggests that the federal limitation period also would start anew after the expiration of the time to seek direct review of the second amended judgment. *See Scott v. Asuncion*, No. 16-55688, 737 Fed.Appx. 348 (9th Cir., Sept. 12, 2018); *Marquez v. McDaniel*, No. 17-15154, 729 Fed.Appx. 583 (9th Cir., June 29, 2018); *Gonzalez v. Sherman*, 873 F.3d 763, 773 n.5 (9th Cir. 2017).[3] It thus would appear that the federal limitation period began to run anew after the expiration of the time to seek direct review on Monday, June 9, 2008. Absent tolling or delayed accrual, the limitation period would expire one year later on June 9, 2009.

With one possible exception, petitioner's state court filings between June 9, 2008, and the constructive filing of the present federal petition on August 10, 2015, either: (a) were untimely state petitions that therefore were not "properly filed" for purposes of statutory tolling under § 2244(d)(2); (b) sought collateral procedural relief rather than

---

[3] Caselaw addressing whether an amended judgment constitutes a new intervening judgment for purposes of successive-petition rules appears to be fully applicable to the question of whether an amended judgment restarts the federal limitation period. *See, e.g., Smith*, 871 F.3d at 687. Respondents suggest that the second amended judgment made no substantive changes. (ECF No. 51, at 8.) However, even if that *arguendo* were true, the absence of any substantive changes in the amended judgment, in and of itself, would not necessarily prevent the amended judgment from restarting the federal limitation period. *Cf. Gonzalez*, 873 F.3d at 773 n.5.

4

challenging petitioner's conviction; (c) otherwise did not challenge his criminal conviction as opposed to challenging a prison disciplinary conviction; or (d) led to proceedings of such short duration that they would not materially impact the calculation of the federal limitation period even if they otherwise potentially might provide a basis for statutory tolling. Moreover, any proceedings filed after a putative expiration of the federal limitation period on June 9, 2009, in all events could not impact the calculation of the federal limitation period, once expired, absent other tolling or delayed accrual that would prevent the limitation period from expiring prior to those proceedings.[4]

Accordingly, at least within the contours of the parties' arguments, it would appear as a provisional matter that the federal limitation period putatively expired on June 9, 2009, absent tolling, delayed accrual, or some other basis to overcome the time bar.[5]

---

[4] The one possible exception referenced at the beginning of the paragraph in the text is a June 26, 2014, petition. (ECF No. 161.) The Court was unable to find where any definitive action was taken on this petition. A later filing by the State suggested that the petition was denied by an order filed on August 15, 2014. (*See* ECF No. 33-46, at 6.) However, the only order of that date in the federal record dismissed a different petition that challenged a prison disciplinary conviction. (ECF 33-24.) While the June 26, 2014, petition would appear to likely be untimely, the current federal record does not clearly reflect the disposition of that petition. (*See also* ECF No. 30-1, at 122 & 124.)

[5] The Court refers to this calculation as a "provisional" calculation because the disposition of several state petitions and other papers filed before the putative expiration of the federal limitation period is unclear.

The federal record contains (a) three state postconviction petitions, (b) an additional filing appearing to challenge the conviction, and (c) a motion challenging the calculation of the credit for time served that all were filed prior to or during the pendency of petitioner's direct appeal. (*See* ECF Nos. 30-26, 30-27, 30-28, 31 & 31-1.) The federal record reflects that the state district court initially ordered a response to one petition that was filed on May 6, 2004. (ECF No. 30-32.) The federal record does not reflect, however, the disposition of that petition or of any of the other above-referenced petitions or other papers. The state district court minutes reflect that: (a) the State initially indicated on June 30, 2004, that it had not responded to petitioner's proper person filings because he still was represented by counsel; (b) the state district court set a briefing schedule on multiple filings on July 19, 2004; (c) the state district court suspended the briefing schedule on August 25, 2004, per direct appeal counsel's request due to the pendency of the appeal; and (d) the state district court took "the matter" off calendar on October 27, 2004, after direct appeal counsel "stated the deft. requests to withdraw the appeal and petition," with the latter reference in the minutes being in the singular. (ECF No. 30-1, at 19, 33 & 36-37.) After the direct appeal was dismissed, petitioner filed the January 21, 2005, petition that was litigated thereafter as described previously in the text. In that regard, the state district court and state supreme court orders referenced only the January 2005 petition in their decisions. (*See* ECF No. 32-4, at 3; ECF No. 32-16, at 2.)

The record and arguments presented thus are not clear as to: (a) the status of all of the proceedings initiated by petitioner prior to or during the pendency of his direct appeal; and (b) the potential impact of that status, including the impact of a petition being "off calendar," on statutory tolling under § 2244(d)(2). *Cf. Brown v. Poole*, 337 F.3d 1155, 1157-58 (9th Cir. 2003) (state habeas petition was pending for purposes of statutory tolling under § 2244(d)(2) during the time that the petition was off calendar at petitioner's request; *Gibson v. Gibson*, 2016 WL 2956348, No. 68467 (Nev., May 18, 2016) (unpublished) (stipulation

*Equitable Tolling*

Davis has presented a neuropsychological evaluation report by Dr. Sharon Jones-Forrester, Ph.D. She opines, *inter alia*, that his alleged borderline intellectual functioning, relatively low literacy and significant neurocognitive and psychiatric deficits following upon a traumatic and dysfunctional childhood, during which he was institutionalized, *inter alia*, "may negatively impact his ability to understand legal information and the legal consequences of his actions, carefully and consistently follow legally required case filing deadlines and make decisions with regard to his case with a reasonable degree of rational understanding." (ECF No. 61-1, at 2, sealed exhibit.)

The Court finds that the handling of Davis' four prior timely federal petitions, which it outlines below, coupled with Dr. Jones-Forrester's neuropsychological opinion, warrants an evidentiary hearing in this matter.

The pleadings in the four actions have remained unfiled on the left side of the archived physical records because the actions were dismissed during initial review. They will be attached as an appendix to this order so that they may be accessed on CM/ECF in this action.

On or about June 29, 2004, Davis dispatched his first federal postconviction proceeding to the Clerk, which was docketed under No. 3:04-cv-00374-HDM-RAM. Davis

---

and order taking an appeal-time tolling motion off-calendar does not constitute a disposition of the motion); *Gayler v. State*, 2014 WL 2703073, No. 65513, at *1 n.1 (Nev., June 12, 2014) (unpublished) (state habeas petitioner could move to place an off-calendar petition back on calendar); *Dennis v. State*, 2013 WL 5719235, No. 63846, at *1 n.1 (Nev., Oct. 16, 2013) (unpublished) (taking a state habeas petition off calendar would preserve the timeliness of the petition under state law); *Sanchez v. State*, 2013 WL 4859517, No. 63527 (Nev., Sept. 9, 2013) (unpublished) (an order taking a state habeas petition off calendar was not a final, appealable decision on the petition); *Warren v. State*, 2013 WL 3305551, No. 62115, at *1 n.1 (Nev., May 13, 2013) (unpublished) (taking a state habeas petition off calendar pending a resolution of the direct appeal would preserve both the timeliness of the petition and the custodial status of the petitioner at the time the petition was filed with respect to the relatively short duration sentence); *Diaz v. State*, 124 Nev. 1031, 281 P.3d 1167 (Nev., April 14, 2009) (unpublished) (a motion to vacate an illegal sentence cannot be resolved by taking the motion off calendar).

Similarly, the federal record does not reflect the disposition of an August 14, 2006, state petition and September 27, 2006, supplemental petition. (ECF Nos. 32-3 & 32-8.) The State responded to each pleading as ordered by the district court. (ECF Nos. 32-5, 32-7, 32-9 & 32-12.) Thereafter, however, no disposition appears in the federal record. The state district court minutes reflect that: (a) the court took, *inter alia*, a petition off calendar on October 23, 2006; and (b) petitioner through counsel thereafter withdrew an unspecified "motion" on December 11, 2006. (ECF No. 30-1, at 75 & 78.)

6

submitted, *inter alia*, a notice of appeal and a motion pursuant to 28 U.S.C. § 2255.[6] All of Davis' papers other than the § 2255 petition were presented on apparently state court forms, on which Davis provided his No. C197660 state court case number.[7]

The initial order in No. 3:04-cv-00374 noted that the Court did not have appellate jurisdiction over the state courts and further that a § 2255 motion was "misguided" as an attack on a state court conviction. The Court directed the Clerk to send petitioner § 2254 forms and instructions and gave him thirty days to file a habeas petition on the correct form. (No. 3:04-cv-00374, ECF No. 3 at 2.)

Davis' pauper application also was on the wrong form and lacked the required financial attachments, given that it also was submitted on state forms. The initial order did not inform Davis of these deficiencies or provide the proper form and instructions, however. The order stated instead that the pauper application was "premature until petitioner files a cognizable pleading herein." (*Id.*)

The initial order in No. 3:04-cv-00374 was entered and served by the Clerk on August 4, 2004. (*Id.*, at 1.) The thirty-day deadline under the order therefore would have expired on Tuesday, September 7, 2004, following the Labor Day holiday.

One day later, on or about September 8, 2004, Davis dispatched a motion for an extension in No. 3:04-cv-00374, writing that docket number on the motion. He sought an extension to November 1, 2004 to file a "civil rights complaint form: 42 U.S.C. 1983." (No. 3:04-cv-00374, ECF No. 4.)[8]

---

[6] Criminal defendants often refer to everything that follows their judgment of conviction as their "appeal," without regard to whether what they are referring to specifically is the direct appeal, state postconviction proceedings, federal postconviction proceedings, or some other postjudgment proceeding. Consequently, they on occasion will request a form to "appeal their conviction" from the prison law library when what they perhaps instead need is the form for a federal petition for a writ of habeas corpus. The circumstances where a state prisoner would have a need for a form for a § 2255 motion would appear to be few and far between, but that apparently was what Davis also requested or was supplied.

[7] Once they have "caught a case," criminal defendants also often fail to distinguish their original criminal proceeding from other distinct cases or actions related to that proceeding. They thus often continue to use, as Davis did here, the case number from their original state court criminal proceeding.

[8] Davis had recently filed several civil rights actions at approximately the same time; and he dispatched similar extension motions in two of the civil rights cases the same date, in Nos. 3:04-cv-00368 and 3:04-cv-00369. It is possible that he confused the habeas action with a civil rights action.

7

Perhaps inconsistently, also on or about September 8, 2004, Davis dispatched to the Clerk: (1) a habeas petition, albeit on a state form; (2) five accompanying handwritten memoranda and/or motions, including papers presenting legal argument on the merits and a motion for a writ of mandamus; and (3) a pauper application, again on state forms. (No. 3:04-cv-00499-LRH-VPC, ECF No. 1 and left side of record.)

The Clerk filed these papers in a new civil action under a new docket number, No. 3:04-cv-00499-LRH-VPC. Davis again had placed the state court docket number – No. C197660 – on his papers. Notably, above the title on the habeas petition form, Davis wrote "Leave to Amend" and, somewhat ambiguously, "Amended Judgment of Conviction." Below the title, he wrote "Demand to Attact [sic] State Court Conviction."

It is not uncommon for inmates to submit a new pauper application along with an amended pleading even when they perhaps do not intend to commence a new civil action. It also is not uncommon for the Clerk to file such papers – in the absence of a docket number from a prior action -- as a new civil action. In the intervening years, the Court has more frequently included language in the operative order expressly instructing petitioners who are submitting an amended pleading in response to the order to place the docket number from the then-pending federal action on the responsive papers. The Court has done so to reduce the incidence of, *inter alia*, amended pleadings submitted in response to a court order being filed instead as a new action.[9]

Perhaps even less consistently, on or about September 21, 2004, Davis dispatched another § 2255 motion and notice of appeal along with a properly-completed

---

[9] Language that the Court has used in subsequent years would have read in the context here:

    IT FURTHER IS ORDERED that petitioner shall clearly title the amended petition as an amended petition by placing the word "AMENDED" immediately above "Petition for a Writ of Habeas Corpus" on page 1 in the caption and shall place the docket number, CV-N-04-0374-HDM-RAM, above the word "AMENDED."

The Court notes that the initial docketing letter sent by the Clerk does inform the inmate of the docket number for the case and tells the inmate: "It is necessary for you to include this case number on all future papers sent to the court for this case." (No. 3:04-cv-00374-HDM-RAM, ECF No. 2.) However, the inclusion of language such as the example in the first paragraph above in the Court's initial compliance orders nonetheless has sharply reduced the incidence of responsive papers being docketed instead as a new action.

8

pauper application and, *inter alia*, a motion for appointment of counsel. While the pauper application was properly completed on the required form with all required financial attachments, Davis had checked "civil rights action" for the type of action on the financial certificate. To the extent that Davis placed a docket number on any of these papers, he used the No. C197660 case number from the state court proceedings. The Clerk docketed these papers as a new civil action under No. 3:04-cv-00528-LRH-RAM.

On October 4, 2004, in No. 3:04-cv-00499, the Court informed Davis that: (1) the pauper form in that action was not filed on the proper form and was incomplete; (2) the habeas petition also was not filed on the proper form; and (3) the Court did not have jurisdiction to issue a writ of mandamus to a state court. The Court directed the Clerk to send petitioner the proper forms and gave Davis thirty days to: (1) either submit a properly completed pauper application on the required form or pay the $5.00 filing fee; and (2) file an amended habeas petition on the required form. This order did expressly direct Davis to include the docket number from that action on any document filed in response to the order. (No. 3:04-cv-00499, ECF No. 2.)

Then, on October 6, 2004, in No. 3:04-cv-00528, the Court issued an order that, *inter alia*: (1) dismissed the § 2255 motion with leave to amend under § 2254 within thirty days; (2) noted petitioner's other pending habeas actions in Nos. 3:04-cv-00374 and 3:04-cv-00499; (3) informed Davis that his only means to challenge his state court conviction was pursuant to § 2254 and by only one petition in one action; (4) stated that the Court was dismissing with leave to amend given the slight possibility that the § 2255 motion arose out of a different nucleus of operative facts than in No. 3:04-cv-00374; (5) otherwise indicated that Davis should seek to amend in No. 3:04-cv-00374; (6) suggested that Davis potentially was filing the § 2255 and mandamus papers solely to harass his custodians or their counsel, although the Court would not serve any such papers until Davis filed a proper action; and (7) informed Davis that, if his motive in filing the multiple actions was to harass the Court, it potentially could issue a "strike" against him under the Prison Litigation Reform Act (PLRA), pursuant to 28 U.S.C. § 1915(g), for frivolous litigation, with

the proviso that if he accumulated three such "strikes" his ability to proceed *in forma pauperis* in future actions would be virtually eliminated. (No. 3:04-cv-00528, ECF No. 3.)[10]

Significantly, on or about October 10, 2004, Davis dispatched to the Clerk: (1) a § 2254 petition filed on the correct form; (2) proper financial attachments for a pauper application that the Court thereafter treated as a pauper application that otherwise would have qualified him for pauper status; and (3) on state court forms, *inter* alia, a habeas petition, pauper application, and motion for appointment of counsel. Davis again checked "civil rights action" on the financial certificate, and he did not supply a federal court docket number on any of the papers. (No. 3:04-cv-00606-ECF-VPC, ECF No 1; ECF No. 3, at 2; and left side of the record.)

These compliant papers – which did not carry a federal docket number -- were not filed in No. 3:04-cv-00374, which still was pending and in which Davis had been ordered to file an amended petition on the required § 2254 petition form.

These substantially compliant papers were not filed in No. 3:04-cv-00499, which also still was pending and in which Davis had been ordered to file both a § 2254 petition and a pauper application on the required forms.

These compliant papers were not filed in No. 3:04-cv-00528, which also still was pending and in which Davis had been ordered to file a § 2254 petition on the required form.

Davis' papers – which carried no federal docket number but which would have complied or substantially complied with the pending orders in each one of the above three cases – instead was filed as yet another separate and new civil action, under No. 3:04-cv-00606-ECR-VPC.

---

[10] The Court discusses the application of the PLRA's "three strikes" provisions to Davis' habeas cases further *infra*. A "strike" already had been assessed in Davis' civil rights action in No. 3:04-cv-00368. The order described in the text did not direct the Clerk to send any forms and did not itself expressly direct that Davis use the docket number for that action on any amended pleading submitted.

Thereafter, in Davis' first habeas action, No. 3:04-cv-00374, by an order filed on October 20, 2004, but not entered until October 28, 2004, the Court dismissed the action without prejudice for failure to file an amended complaint within the time allowed by the initial order. The dismissal order did not expressly reflect consideration of the possibility that the intervening pleadings dispatched on September 8, 2004, and filed instead in No. 3:04-cv-00499 might have constituted an at least attempt by Davis to comply with the initial order in No. 3:04-cv-00374. Nor did the dismissal order expressly reflect consideration of the fact that Davis' petition dispatched on October 10, 2004, and filed on October 14, 2004 instead under No. 3:04-cv-00606 would have complied with the Court's initial order. The order further denied the pending extension motion as moot, although Davis had requested an extension through November 1, 2004. (No. 3:04-cv-00374, ECF No. 5.)

On November 2, 2004, the Court issued an initial order in No. 3:04-cv-00606, the action in which Davis had filed compliant papers. The order found that Davis had "struck out" under the "three-strikes" provisions of 28 U.S.C. § 1915(g), based on four prior civil rights actions that had been dismissed for failure to state a claim. His pauper application, which showed that he had only $0.09 on hand, was denied on this basis. The Court gave Davis until December 1, 2004, to: "(1) pay the $5 filing fee for this action; (2) submit an amended petition with this case number showing that he is in imminent danger of serious physical injury and attacking a sentence or conviction that is not addressed in his other petitions; or (3) move to voluntarily dismiss this action and incorporate the claims raised in this petition in one of the actions for habeas corpus [one of which had just been dismissed] already opened and on-file in this United States District Court." (No. 3:04-cv-00606, ECF No. 3.)

This three-strikes order applying § 1915(g) to a habeas case contradicted established Ninth Circuit precedent. In *Naddi v. Hill*, 106 F.3d 275 (9th Cir. 1997), the Ninth Circuit addressed a question of whether provision requiring prisoners to pay the full filing fee even if they were granted pauper status applied to habeas cases. The provision

in question had been added in § 1915(b) by the PLRA. The Ninth Circuit's analysis clearly rejected the application of the PLRA amendments to § 1915 – including the "three-strikes" rule in § 1915(g) – to habeas actions:

> The term "civil action or appeal" used in section 1915, for example, does not include habeas proceedings in other sections of the PLRA, and thus indicates that it was not intended to include such proceedings in that section. Section 1915(g) prevents prisoners from filing civil actions or appeals where at least three prior such actions have been dismissed as frivolous or for failure to state a claim, unless the plaintiff can demonstrate that he or she is under imminent danger of serious bodily injury. *Such a demonstration is clearly not required in habeas proceedings*. See also 42 U.S.C. § 1997e(e) (imposing on civil actions a requirement of a prior showing of physical injury to maintain claim for mental or emotional injury).
>
> In addition, as the parties point out, Congress was concerned with civil rights and prison conditions cases when it debated and adopted the PLRA. *See e.g.*, 141 Cong.Rec. S7523-27 (daily ed. May 25, 1995) (statement of Senator Dole). Congress was clearly not concerned with habeas corpus proceedings when they enacted the PLRA, as is further evidenced by the absence of any reference to the PLRA or the forma pauperis revisions in the AEDPA enacted only two days earlier. *We therefore hold that the forma pauperis provisions of the PLRA relating to prisoner civil actions and appeals do not apply to habeas corpus proceedings*.

106 F.3d at 277 (emphasis added).

Any attempt to discount *Naddi* because it involved only the full-payment provision of § 1915(b) necessarily would fail. First, the Ninth Circuit clearly held that "the forma pauperis provisions of the PLRA relating to prisoner civil actions and appeals do not apply to habeas corpus proceedings." The three-strikes provision of § 1915(g) is such a provision.[11] Moreover, the Ninth Circuit removed any possible room for doubt by stating

---

[11] 28 U.S.C. § 1915(g) provides, with emphasis added:

(g) In no event shall a prisoner bring *a civil action* or appeal a judgment in a civil action or proceeding under this section [providing for proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is

12

that a demonstration of imminent danger of serious bodily injury "clearly is not required in habeas proceedings."

The application of the three-strikes provision in § 1915(g) to the habeas action in No. 3:04-cv-00606 – in which Davis finally had filed compliant pleadings – therefore was erroneous under established Ninth Circuit precedent. As a result, the Court erroneously required Davis to pay the $5.00 filing fee, which he clearly could not do. The Court further erroneously required Davis to show in the alternative that he was imminent danger of serious bodily injury, a demonstration that has no relevance to a noncapital habeas case and which he also clearly could not do.[12]

Thereafter, on November 17, 2004, prior to the December 1, 2004, deadline set in No. 3:04-cv-00606, the Court dismissed No. 04-cv-00528 without prejudice because Davis had not filed an amended pleading in that action. This dismissal order did not expressly reflect consideration of whether, in context, Davis' petition dispatched on October 10, 2004, and filed on October 14, 2004 instead under No. 3:04-cv-00606 would have substantially complied with its initial order. (No. 3:04-cv-00528, ECF No. 4.)

A short time later, by an order entered on December 6, 2014, the Court dismissed No. 3:04-cv-00499 without prejudice for failure to file any papers in response to the initial order. This dismissal order also did not expressly reflect consideration of the fact that Davis' petition dispatched on October 10, 2004, and filed on October 14, 2004 instead under No. 3:04-cv-00606 would have complied with the Court's initial order. (No. 3:04-cv-00499, ECF No. 3.)

Then, by an order entered on December 8, 2014, the Court dismissed No. 3:04-cv-00606 – the action in which Davis had filed papers that would have complied with the orders in the three dismissed cases and done so prior to their dismissal – because Davis

---

frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

[12] It further is subject to question whether the *Heck*-based dismissals in two of Davis' prior civil rights cases relied upon by the Court, in Nos. 3:04-cv-00368 and 3:04-cv-00369, qualified as "strikes" in any event. *See Washington v. Los Angeles County Sheriff's Dept.*, 833 F.3d 1048, 1054-57 (9th Cir. 2016).

13

had not complied with the in large part impossible requirements imposed by the erroneous three-strikes order. (No. 3:04-cv-00606, ECF No. 4.)

Even if papers submitted by Davis without a prior federal docket number *arguendo* were properly docketed as a new action initially, the Court nonetheless arguably was required to construe the filings in No. 3:04-cv-00606 as submitted for a prior pending action in order to avoid prejudice to the petitioner. *Cf. Woods v. Carey*, 525 F.3d 886 (9th Cir. 2008) (the rule requiring liberal construction of *pro se* pleadings required the district court to construe a new petition filed in new action as a motion to amend the pleadings in a prior still-pending action rather than construing the new petition as a successive petition). Here, however, the Court instead dismissed three actions for a failure to file compliant papers notwithstanding Davis' submission of compliant papers that were docketed by the Clerk as a new action in No. 3:04-cv-00606. Then after dismissing the prior three actions for Davis' failure to file compliant papers, the Court dismissed the action in which he did file compliant papers by erroneously applying the three-strikes provision in § 1915(g) to the habeas case.[13]

Due to these dismissals of what clearly were timely petitions, the Court never had occasion to consider: (1) possible appointment of counsel, which the Court later found was required by the interests of justice in this action; (2) the prospect that Davis at least to an extent had exhausted claims at the time of the dismissals by virtue of his earlier original petition in the state supreme court;[14] and/or (3) whether a stay for further exhaustion might be warranted if requested by appointed counsel.[15]

---

[13] Only a short time after the dismissal of No. 3:04-cv-00606, on February 22, 2005, the Ninth Circuit reaffirmed that the PLRA's three-strikes rule does not apply to habeas cases. *See Andrews v. King*, 398 F.3d 1113, 1122-23 (9th Cir. 2005).

[14] *See* ECF Nos. 31-5 & 31-6. The Ninth Circuit held in *Chambers v. McDaniel*, 549 F.3d 1191, 1195-99 (9th Cir. 2008), that language comparable to that used by the Supreme Court of Nevada in its August 23, 2004, order denying Davis' petition constituted an adjudication on the merits.

[15] The Ninth Circuit held in *Mena v. Long*, 813 F.3d 907 (9th Cir. 2016), that a stay may be available even when all claims in a petition are unexhausted. While *Woods*, *Chambers*¸ and *Mena* all were decided after the four dismissals, the decisions did not overrule any prior decisions that the panels regarded as representing binding circuit precedent. The decisions thus reflect the Ninth Circuit's appraisal of what the law was at the time relevant here.

On or about June 17, 2005, Davis dispatched, *inter alia*, a § 2254 petition and a pauper application on the proper forms, with the new action being docketed under 3:05-cv-00369-LRH-VPC. By an order entered on August 2, 2005, The Court, *inter alia*: (1) granted the pauper application, finding it sufficient; (2) noted that Davis had not signed the petition; (3) stated that it appeared from the face of the petition that none of the claims had been exhausted and noted that Davis had not completed all of the exhaustion queries on the petition form; and (4) gave Davis until September 23, 2005, to file an amended petition, *inter alia*, that was signed and that provided detailed information regarding exhaustion as to each of his claims. Davis did not respond; and approximately one year later, by an order entered on September 22, 2006, the Court therefore dismissed the action. (No. 3:05-cv-00369, ECF Nos. 1, 4, 6 & 8.)

On or about August 9, 2007, Davis dispatched an application to file a second or successive petition to the Ninth Circuit. The court of appeals treated the application as an original habeas petition and transferred the matter to this Court, where the action was docketed as No. 2:07-cv-01693-PMP-RJJ. By an order entered on January 9, 2008, the Court directed the Clerk to send Davis pauper and habeas petition forms and instructions; and the Court gave Davis thirty days within which to file an amended petition on the required form and either pay the filing fee or submit a properly completed pauper application. Davis obtained an extension of time through March 24, 2008. Thereafter, however, he filed instead: (1) a motion for immediate release based upon the error in the May 11, 2005, amended judgment of conviction described previously herein; and (2) a financial certificate and inmate account statement without a pauper application. Davis thus filed neither the amended petition nor the pauper application required by the Court. The action therefore was dismissed by an order entered on April 14, 2008. (No. 2:07-cv-01693-PMP-RJJ, ECF Nos. 1-8.)

Thereafter, subsequent to the provisional putative expiration of the federal limitation period on June 9, 2009, Davis dispatched, *inter alia*, a § 2254 petition and a pauper application, with the new action being docketed as 2:10-cv-01365-RLH-LRL. The

15

Court granted the pauper application. The Court further directed Davis to file an amended petition fully on the required form and stating his claims with specificity. After Davis filed an amended petition, the Court dismissed the action for failure to state a claim, finding that he had not alleged sufficiently specific claims to withstand dismissal. Both this Court and the court of appeals denied a certificate of appealability, with the matter concluding in the appellate court in March 2012. (No. 2:10-cv-01365, ECF Nos. 1, 3-7, & 13.)

Davis dispatched the initial pleadings in the present action on or about August 10, 2015. (ECF No. 4, at 1.)

To be sure, Davis failed to follow through – for whatever reason – in several instances after filing multiple timely actions prior to the provisional putative expiration of the federal limitation period on June 9, 2009. However, this Court also inadvertently put Davis through a procedural gauntlet where potentially responsive and even compliant papers were docketed separately as new actions and then disregarded when the Court dismissed his first three timely actions. The Court then dismissed the action in which Davis' compliant papers were docketed on an erroneous basis, incorrectly subjecting his timely and procedurally compliant habeas action to the three-strikes provisions of § 1915(g). In short, the one time that Davis finally successfully navigated through all the applicable procedural rules and duplicative docketing and presented a timely and compliant federal petition, his action then was dismissed in error.

The Court pretermits for the moment consideration as to whether it should exercise its equitable discretion with respect to the timely filed but dismissed prior actions under *Anthony v. Cambra*, 236 F.3d 568, 574 (9th Cir. 2000), and as to the extent of any relief that then should be afforded.

In the meantime, on the separate and distinct issue of equitable tolling, the Court would like to hear testimony, *inter alia*, by the clinical neuropsychologist regarding the interaction between the Court's handling of petitioner's initial timely habeas petitions as specifically described herein and the alleged borderline intellectual functioning, low literacy and neurocognitive and psychiatric deficits referenced in her expert report.

The Court accordingly will grant petitioner's motion for an evidentiary hearing, at which it will consider all factual evidence and legal argument presented directed to the timeliness of the federal petition in this matter.

IT IS THEREFORE ORDERED that petitioner's motion for an evidentiary hearing (ECF No. 62) is GRANTED and that the matter is set for an evidentiary hearing for **10:00 a.m. on <u>June 25, 2019</u>** in Courtroom 7C, Lloyd D. George United States Courthouse, 333 Las Vegas Blvd., Las Vegas, Nevada, with respect to all legal and factual issues pertaining to respondents' motion to dismiss (ECF No. 50), which remains pending at this time.

IT IS FURTHER ORDERED that, during the docketing of this order, the Clerk shall retrieve from the Court's pro se law clerk, Mr. King, the physical records in Nos. 3:04-cv-00374, 3:04-cv-00499, 3:04-cv-00528, and 3:04-cv-00606 obtained previously from archives and shall file as an Appendix to this order copies of the papers on the left side of the physical records in those prior actions. While the Court leaves the specific manner and formatting of the Appendix to the Clerk's discretion, the Court and the parties will need to be able to readily identify which left-side papers from which case are filed in which specific CM/ECF attachment or attachments, such as perhaps via a cover sheet along with identified CM/ECF attachments, somewhat similar to how petitioner filed his exhibits.

IT IS FURTHER ORDERED that in the prehearing memoranda directed below, the parties additionally shall address: (a) the statutory-tolling issue referenced in footnote 5 of this order with regard to off-calendar and other possibly still-pending state court filings; and (b) whether relief should be afforded and the extent thereof with regard to the prior erroneous dismissals of petitioner's timely federal habeas petitions discussed herein. Counsel should not assume that posthearing briefing automatically will be directed.

IT IS FURTHER ORDERED that petitioner's unopposed motion to file exhibit under seal (ECF No. 60) is GRANTED, and that petitioner is granted leave to file the sealed exhibit filed with ECF No. 63 under seal, with the Court finding in accordance with the requirements of *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006),

that a compelling need to protect the medical confidentiality, privacy and/or personal identifying information of petitioner and/or others with regard to the sealed exhibit outweighs the public interest in open access to court records.

IT IS FURTHER ORDERED that respondents' unopposed motion for an extension of time (ECF No. 71) is GRANTED *nunc pro tunc* in connection with the filing of respondents' reply in support of their motion to dismiss and their opposition to petitioner's motion for an evidentiary hearing (ECF Nos. 72 & 73).

IT IS FURTHER ORDERED that counsel shall complete the following prehearing procedures:

1. **Exchange of Preliminary Witness and Exhibit Lists and Stipulations.** No later than **twenty-eight (28) days** prior to the hearing, counsel shall confer together either in person or by telephone and shall exchange preliminary exhibit and witness lists, exchange (either in person or indirectly such as via mail, email or fax) any exhibits not already possessed by opposing counsel, as well as discuss stipulations as to authenticity and any evidentiary objections.

2. **Final Witness and Exhibit Lists and Evidentiary Objections.** No later than **twenty-one (21) days** prior to the hearing, counsel shall jointly file a consolidated final list of the witnesses and exhibits to be offered jointly and/or by each party and which shall further identify any evidentiary objections that may be anticipated in advance of the hearing. No party will be allowed to introduce over objection any witness or exhibit not listed in the final witness and exhibit list, except that a party may file a supplement no later than **fourteen (14) days** prior to the hearing listing evidence in response to any witness or exhibit identified for the first time in the final list. No objection that may be anticipated in advance of the hearing will be preserved unless raised in the final list.

3. **Length of Hearing; Interpreters; Other Housekeeping Matters.** The Court anticipates that the hearing possibly may take up to a full day. If counsel (a) anticipate that the hearing will run longer than one full day, (b) anticipate that an

interpreter will be needed for a party or a witness, and/or (c) have other housekeeping matters to address regarding the hearing, they shall contact the Courtroom Administrator regarding same no later than **twenty-one (21) days** prior to the hearing.

4. **Prisoner Transport Order and Subpoenas of Non-Prisoner Witnesses.** No later than **fourteen (14) days** before the hearing, petitioner's counsel shall submit an order to transport prisoner to secure petitioner's presence at the hearing; and any party wishing to call any other prisoner to testify similarly shall submit an order to transport prisoner by that date. No continuance will be granted for failure to secure the attendance of the petitioner or any other prisoner unless an order to transport prisoner was timely sought. Similarly, no continuance will be granted for failure to secure the attendance of a non-prisoner witness who was not seasonably subpoenaed. **Each prisoner-transport order shall include the following sentence as the final paragraph: "The Clerk of Court additionally shall provide a copy of this order to the Marshal's Las Vegas office."**

5. **Prehearing Memoranda.** No later than **seven (7) calendar days** prior to the hearing, counsel for petitioner and for respondents each shall file a prehearing memorandum setting forth the evidence that they expect to present at the hearing together with their legal argument regarding the issues to be raised by the anticipated evidence presented by the parties at the hearing.

6. **Exhibit Binders.** On the morning of the hearing, counsel for petitioner and for respondents each shall provide to the Courtroom Administrator four binders or sets of exhibit binders, with one such binder or set of binders containing the exhibits offered for introduction at the hearing, and the other three binders or sets being for the bench, the witness stand, and the staff attorney. Each counsel additionally shall provide one additional binder or set of binders to opposing counsel. If joint exhibits are submitted, counsel shall arrange between themselves similarly to provide to the Courtroom Administrator four binders or sets of exhibit binders

| | |
|---|---|
| 1 | containing the joint exhibits. The "original" exhibits within the binder(s) for the Clerk |
| 2 | each shall be marked by an exhibit sticker, prior to being copied for the other sets |
| 3 | of binders. Any lengthy exhibits that are not otherwise internally numbered and |
| 4 | that likely will be referenced in detail during live testimony shall be Bates-number |
| 5 | stamped for ease of reference during the testimony. |

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 50) is dismissed without prejudice. It may be refiled upon completion of the hearing in this case.

DATED: March 31, 2019.

_____
RICHARD F. BOULWARE, II
United States District Judge