UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JAMES ANTHONY DAVIS,

  *Petitioner,*

v.

DWIGHT W. NEVEN, *et al.,*

  *Respondents.*

Case No. 2:15-cv-01574-RFB-NJK

**FINDINGS OF FACT,
CONCLUSIONS OF LAW,
AND ORDER**

  This habeas matter under 28 U.S.C. § 2254 having come for an evidentiary hearing on September 4, 2019, on Respondents' Motion to Dismiss the petition as untimely (ECF No. 50), and the Court having received the testimony, evidence, and argument presented on the issues raised, does hereby make the following:

<u>FINDINGS OF FACT</u>

  1.  Petitioner James Davis challenges his Nevada state conviction pursuant to a guilty plea of first-degree murder.  He is sentenced to life with the possibility of parole after twenty years.

  2.  Since at least early adolescence, Davis has suffered from the combined impact of both cognitive impairments and mental health issues.  He has borderline intellectual functioning, with a consistent IQ test result over the years, by multiple examiners, of 72.  This IQ level borders on intellectual disability, and indeed the lower bound of the confidence interval for such testing potentially would be below an IQ of 70, reflecting intellectual disability.  He further suffers from, *inter alia*, severe major depressive disorder

with multiple suicide attempts, unspecified neurocognitive disorder, anxiety disorder, and post-traumatic stress disorder (PTSD), along with an insomnia disorder associated with the PTSD.

3.   Davis' stress disorder follows upon a history of neglect and physical, emotional, and sexual abuse directed at him as a child and continuing into young adulthood, as well as witnessing physical and emotional abuse directed by his father at other family members.   He reported additional incidents of sexual assault and abuse during his incarceration.

4.   Davis was first hospitalized in a psychiatric facility at age fourteen for a period of two and a half years.   Off and on over the years, he has been placed on the psychiatric medication Mellaril.

5.   As reflected in the testimony, reports, testing, and evaluation by neuropsychologist and forensic psychologist Dr. Sharon Jones-Forrester, Ph.D., which the Court finds credible and persuasive, Davis' cognitive impairments negatively impact his ability to consistently and effectively understand and follow abstract, complex, and multistep information and instructions, such that he tends to interact with the world at a concrete rather than abstract level. Davis' ability to understand and follow complicated instructions is further impaired if the task is interrupted or spread out over time.   His capacity to consistently understand and follow complex and multistep instructions is further impaired when he is stressed, rushed, subjected to distractions, and/or encounters an unfamiliar situation.   Davis' cognitive impairments limit his reading comprehension to a 6.7 grade level.

6.   Davis' cognitive impairments are exacerbated by his mental health issues and vice versa.   His borderline intellectual functioning, neurocognitive deficits, and psychiatric difficulties intersect in a manner that will exacerbate each of these difficulties.   The effects of his depression, anxiety, PTSD, and insomnia make it more difficult for him to overcome his cognitive limitations, further undermining his ability to consistently and effectively understand and follow procedural guidelines.   Davis' conditions further lead to paranoia

and distrust of others as he struggles to understand complex situations.  Davis' combined impairments thus adversely impact his ability to consistently and effectively obtain adequate help from others.  He has a marked difficulty with managing his comprehension problems in an effective manner, both in terms of reaching out to others for assistance in the first instance, and thereafter deferring to their expertise and guidance in navigating procedural issues.

7.  The original judgment of conviction was entered on April 27, 2004; and Davis filed, *inter alia*, a timely notice of appeal in proper person on May 17, 2004.

8.  The Court incorporates, as if set forth herein *in extenso*, the factual portions of the full discussion of the state court procedural history potentially relevant to a calculation of the federal limitation period that is set forth in the evidentiary hearing order (ECF No. 75 at 1-5) including all footnotes.  As will be discussed further in the Conclusions of Law section, the parties do not substantially dispute – subject to the impact of matters that were taken off calendar or otherwise unresolved in the state courts – the accuracy of what the Court identified as a provisional putative expiration date of the federal limitation period, absent additional tolling, delayed accrual, or some other basis to overcome the federal time bar.  That provisional putative expiration date was June 9, 2009.  Against that accepted provisional backdrop, the Court's factual recital and findings herein therefore instead focus on developments material to its analysis of contested issues that were presented on the Motion to Dismiss.  The Court also will note for context certain dates or events along the way that serve as reference points.

9.  Prior to and during the direct appeal, the state district court clerk received and filed multiple petitions and other papers in the state district court attempting to challenge Davis' confinement and/or the duration of his sentence.  A number of these proceedings were taken off calendar or otherwise not acted upon by the state courts.  The Court briefly summarizes these proceedings and their status as to disposition below.

The proceedings filed by the Clerk included, *inter alia*: (1) a handwritten "Petition for Writ of Habeas Corpus" received on May 3, 2004, and filed on May 6, 2004, before

the notice of appeal (ECF No. 30-26); (2) a "Petition for Writ of Habeas Corpus (Post-Conviction)" on a state petition form filed on May 6, 2004 (ECF No. 30-28); (3) another May 6, 2004, filing asserting that defense counsel had been ineffective and had a conflict of interest, in which Davis also sought release from confinement (ECF No. 30-27); (4) an untitled and uncaptioned long handwritten proper person document filed on June 18, 2004, that included a captioned document styled as a "writ of habeas corpus and/or motion for immediate consideration" (ECF No. 31); and (5) a form motion for amended judgment of conviction to include jail time credits filed on June 21, 2004 (ECF No. 31-1).

The state district court, *inter alia*:  (1) on May 10, 2004, initially ordered the State to respond to one May 6, 2004, "Petition for Writ of Habeas Corpus (Post-Conviction Relief)" (ECF No. 30-32); (2) thereafter appointed substitute counsel following upon a directive by the state Supreme Court concerning the appeal and a motion to withdraw by prior defense counsel (ECF No. 31-3); and (3) on July 19, 2004, set a briefing schedule on, *inter alia*, two "pro per petition(s) for writ of habeas corpus" and a "pro per motion for amended judgment of conviction to include jail time credits" (ECF No. 30-1 at 31).  On August 10, 2004, new counsel moved to suspend the briefing schedule due to the pending direct appeal, ECF Nos. 31-4, 31-8, which the district court did on August 25, 2004, ECF No. 30-1 at 34.

Thereafter the minute entry for an October 27, 2004, status check, which did not reflect that Davis was present, stated:

> Mr. Longabaugh stated the deft. requests to withdraw the appeal and petition. COURT ORDERED, matter OFF CALENDAR based on Mr. Longabaugh's representations.

(ECF No. 30-1 at 35.)

The state court record materials filed in this Court do not reflect that the state district court ordered any disposition as to the total of three petitions (rather than only one petition) and the other motions and filings seeking to challenge Davis' confinement, other than taking the matter off calendar.  See ECF No. 32-4 at 1-2. Notwithstanding counsel's representations, Davis still was seeking state postconviction relief less than three months

4

later, in a petition filed on January 21, 2005. See ECF No. 32-16 at 1. State court orders thereafter addressed only subsequent papers filed on and after that date, without addressing any prior filings taken off calendar on October 27, 2004.

The Court accordingly finds that the proceedings summarized in this finding were taken off calendar but not acted upon.  They were not acted on despite the fact that Davis continued to seek to challenge his conviction in state court within months after the matter was taken off calendar, without resolving his multiple filings.

10.   Meanwhile, at the same time that his appointed state court counsel was withdrawing his direct appeal and a state court petition, Davis was attempting to challenge his conviction in federal court. This sharp contrast between his appointed lawyer withdrawing certain state court challenges to his conviction purportedly on his behalf while Davis was simultaneously challenging his conviction calls into question whether Davis in fact wanted to withdraw any of his challenges.

11.   In federal court, Davis (already hindered by the combined effects of his cognitive impairments and mental health issues) encountered perhaps a more formidable obstacle.   This Court made multiple errors in handling Davis' attempted federal challenges, resulting in the erroneous dismissal of substantially compliant papers. Thereafter, including after the federal limitation period had putatively expired, the Court repeated and compounded its prior errors when it failed to correct them as Davis diligently continued to pursue his rights.[1]

12.   The Court incorporates, as if set forth herein *in extenso*, the factual portions of the full discussion of the prior federal procedural history that is set forth in the evidentiary-hearing order (ECF No. 75 at 6-16) including all footnotes, supporting record citations, and attachments.  In this regard, the evidentiary hearing order discusses, *inter alia*, both the Court's general practices in habeas cases over time as well as general

---

[1] The Court does not denigrate either the intention or effort in the prior matters discussed herein. As a court applying equity, however, the Court must consider all relevant circumstances; and it must state the situation plainly and directly.  The Court erred in its handling of the prior cases.

1   practices and terminology employed by inmate petitioners in those cases.  In all such

2   respects, the Court takes judicial notice of what is reflected by its extensive habeas docket

3   over the years, including in the specific habeas matters discussed in the prior order that

4   is incorporated herein.[2]

5       13.   The procedural history detailed in the prior order reflects that Davis first

6   dispatched suit papers to the Court on or about June 29, 2004, which were docketed

7   under No. 3:04-cv-00374-HDM-RAM.   Thereafter, every time that Davis submitted

8   pleadings and related filings without a prior federal docket number, as even unimpaired

9   inmates tend to do, the papers were docketed as a new action under a new docket

10  number.  Davis' September 8, 2004, submission was docketed as No. 3:04-cv-00499-

11  LRH-VPC.  His September 21, 2004, submission was docketed as No. 3:04-cv-00528-

12  LRH-RAM.  His October 10, 2004, submission was docketed as No. 3:04-cv-00606-ECR-

13  VPC.[3]

14      14.   The Clerk of Court properly docketed Davis' filings as four separate federal

15  actions given the absence of a prior federal docket number on the later filings.  However,

16  as discussed in the Conclusions of Law section, *infra*, the Court nonetheless had an

17  obligation to "connect the dots" and consider whether papers docketed as a new federal

18  action instead should be treated as amended or supplemental filings in a prior action, to

19  avoid prejudice to the petitioner.  The Court failed to do so.

20      15.   Indeed, as the incorporated discussion details, Davis' October 10, 2004,

21  submission docketed under No. 3:04-cv-00606 would have substantially corrected the

22  deficiencies identified in the initial screening orders in the prior three actions.  Moreover,

23  the papers docketed by the Clerk of Court under No. 3:04-cv-00606 most certainly would

24  have reflected a good faith effort to comply with any one of the three prior screening

25
26  [2] See e.g., Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (judicial notice of prior federal records). The Court further notes obvious typographical errors as to judge designation and dates in ECF No. 75 at 10, line 10 and at 13, lines 16 and 22.

27
28  [3] As previously stated, Davis therefore was actively seeking to challenge his conviction in federal court at substantially the same time that his appointed counsel in state court was withdrawing his direct appeal and a state petition purportedly on his behalf.

orders if the papers had been treated as amended filings in any or all of the prior actions – thereby precluding a dismissal for a failure to respond to and comply with the screening order.

16.  Instead, the Court ultimately dismissed the first docketed action, No. 3:04-cv-00374, for failure to respond to the screening order that identified deficiencies in Davis' June 29, 2004, papers.  The dismissal order does not indicate that the Court considered whether his later papers docketed as three separate actions should have been treated at the very least as functionally responsive to the screening order in that case.

17.  Similarly, the Court ultimately dismissed the second docketed action, No. 3:04-cv-00499, for failure to file any papers in response to the initial order.  This dismissal order also did not expressly reflect consideration of whether Davis' substantially compliant October 10, 2004, papers docketed instead as a fourth action would have complied with or at least been functionally responsive to the initial screening order in that case.

18.  The screening order in the third docketed action, No. 3:04-cv-00528, did, in a sense, connect the dots with the first two docketed actions.  However, that order did not consider the possibility that Davis' submissions docketed as the second and third actions instead should have been treated, without further action by Davis, as responsive to the screening orders in the first action.  The Court instead suggested that Davis was trying to harass his custodians or their counsel by filing multiple actions.  The Court further suggested that if his motive was to harass the Court, then it potentially could issue a "strike" against him under the Prison Litigation Reform Act (PLRA), with the proviso that if he accumulated three such "strikes" his ability to proceed *in forma pauperis* in future would be, in the Court's words, "virtually eliminated."  Over and above this threat, the Court suggested that Davis should seek to amend in the first action, No. 3:04-cv-00374, unless the current action arose out of a different nucleus of operative fact.  The Court allowed an opportunity to amend if that were the case.  The Court ultimately dismissed the third docketed action, No. 3:04-cv-00528, for failure to file any papers in response,

without reflection as to whether the actions should have been considered together for a purpose other than to determine if Davis was harassing state officials or the Court.

19.  The Court dismissed the fourth action, No. 3:04-cv-00606, after applying the PLRA's "three strikes" provision in 28 U.S.C. § 1915(g) to the habeas case.  As discussed in the Conclusions of Law section, *infra*, this application of the three-strikes provision to a habeas case was demonstrably wrong under controlling Ninth Circuit law.  The action – the one action in which Davis finally had presented substantially compliant papers – was therefore clearly erroneously dismissed after the indigent defendant neither paid the filing fee nor, irrelevantly, showed that he was in imminent danger.

20.  In sum, the Court dismissed three timely actions for failure to file compliant papers notwithstanding Davis' filing of substantially compliant papers that instead were docketed as a new action in No. 3:04-cv-00606.  Then, over and above these three improper dismissals for failure to file compliant papers, the Court further dismissed the timely action in which Davis *did* present substantially compliant papers by erroneously applying the PLRA's three-strikes provision to the habeas case.

21.  This compound error by the Court constituted a substantial impediment to Davis timely seeking federal habeas relief, most especially in conjunction with his documented cognitive impairments and mental health conditions.  As Dr. Jones-Forrester explains, accounting for Davis' impairments, his filing substantially compliant papers would be the result of chance—not consistently repeatable capacity.  The one time that Davis happened to file substantially compliant papers that would have avoided a screening dismissal the Court (a) erroneously dismissed three open actions in which the substantially compliant papers likely would have precluded dismissal and also (b) erroneously dismissed the fourth action in which the substantially compliant papers were docketed.  In conjunction with Davis' cognitive impairments and mental health issues, the Court's erroneous dismissals constituted a substantial impediment to his timely pursuit of federal habeas relief.

22.   The Court further affirmatively misled Davis in Nos. 3:04-cv-00528 and 3:04-cv-00606 by, collectively, erroneously telling Davis:  (1) that his habeas actions, including appeals from this Court's orders, were subject to the three-strikes provisions of the PLRA; (2) ultimately that he had "struck out;" (3) that the indigent inmate, after striking out, therefore could not pursue further relief without paying the filing fee or somehow showing that he was in imminent danger of serious physical injury without habeas relief; and (4) that his ability to seek habeas relief as a pauper thus had been "virtually eliminated."  The Court thus erroneously advised the indigent Davis that he was functionally barred from seeking habeas relief despite no federal petition of his having been either adjudicated on the merits or held to be untimely.

23.   By its very design, a three-strikes order is intended to discourage, deter, and impede an inmate from seeking further federal judicial relief.  The Court's three-strikes order in Davis' habeas case thus was designed to impede the clearly indigent Davis, who then had nine cents in his inmate account, from seeking further federal habeas relief.

24.   The Court compounded its errors and erroneous advisements in the four 2004 cases when Davis thereafter nonetheless diligently attempted to seek federal habeas relief.

25.   On February 11, 2005, only two months after the December 8, 2004, three-strikes dismissal in No. 3:04-cv-00606, the Ninth Circuit further confirmed that the PLRA's three-strikes provision does not apply to habeas cases.  See Andrews v. King, 398 F.3d 1113, 1122-23 (9th Cir. 2005).

26.   When Davis again attempted to pursue federal habeas relief on or about June 17, 2005, in No. 3:05-cv-00369-LRH-VPC, the Court nonetheless did not expressly consider the exercise of its equitable power to correct its four erroneous dismissals only months before.  As discussed further in the Conclusions of Law section, infra, a district court's failure to expressly consider whether to exercise its equitable power to correct earlier errors may require a remand for the exercise of such discretion.  The Court instead

gave Davis another set of relatively complex instructions, in this instance on, *inter alia,* the abstract issue of exhaustion, prior to ultimately dismissing after he failed to respond.

27.   Davis thereafter again, within his limitations, diligently attempted to pursue federal habeas relief on or about August 9, 2007, by filing an application to file a second or successive petition in the Ninth Circuit.  The Court of Appeals transferred the matter to this Court, which docketed the action under No. 2:07-cv-01693-PMP-RJJ.  This action also was filed before the June 9, 2009, earliest possible expiration date of the federal limitation period identified herein.

Significantly, Davis' allegations and papers put the Court on notice that Davis had mental health issues.  In particular, the state Supreme Court decision attached with Davis' filing specifically referred to documented mental health issues previously requiring institutionalization.  (No. 2:07-cv-01693-PMP-RJJ, ECF No. 1 at 9, 11, 12, 22-24.)  The presence of possible mental health issues is a strong factor weighing in favor of *sua sponte* appointment of counsel during screening – so that the inmate's ability to litigate issues associated with his alleged mental health issues is not itself impaired by those issues.  Moreover, it is difficult for an inmate to obtain and present relevant medical and mental health records due to corrections department restrictions on inmate access to the records.

The Court nonetheless did not appoint counsel.  It instead gave the impaired Davis another set of instructions, this time to file an amended petition and possibly a pauper application on the proper forms.  The Court thereafter dismissed the case after what Davis then filed, ostensibly with the help of another inmate, did not comply with what the Court had instructed him to do.  Again, the Court did not expressly consider whether counsel should have been appointed for the indigent inmate with documented mental health issues following his failure to comply with the Court's specific instructions.  Nor did the Court expressly consider whether to exercise its equitable power to correct its multiple erroneous dismissals of prior actions by the impaired, indigent, and pro se inmate.

The Court's dismissal of Davis' 2007 action therefore further compounded the errors from the prior dismissals, when he was still seeking relief prior to the earliest possible expiration of the federal limitation period.

28.  The Court again failed to correct its prior erroneous dismissals when Davis returned to federal court in No. 2:10-cv-01365-RLH-LRL.  This time the failure to exercise equitable power to correct the prior errors was even more critical, because the June 9, 2009, possible expiration date of the limitation period had now passed.

Davis moved for appointment of counsel.  His pleadings and papers referred to an alleged failure of defense counsel to secure a psychiatric evaluation and also to a mental health evaluation having been done during state post-conviction review.  (No. 2:10-cv-01365, ECF No. 1-2, at 7; ECF No. 5 at 5, 13, 18.)  After an opportunity to amend, the Court ultimately dismissed the petition as amended for failure to state a claim, without appointing counsel.  The Court did not expressly consider whether to exercise its equitable power to correct its multiple erroneous dismissals of prior actions by the petitioner with documented mental health issues, which had been reflected even more definitively in his 2007 federal court filing.

The Court's dismissal of Davis' 2010 action therefore further compounded the errors from the prior dismissals, when Davis was now seeking relief after a possible expiration date of the federal limitation period.

29.  The impaired petitioner made it to the courthouse door multiple times, only to be repeatedly turned away by this Court, in error.  Davis, notwithstanding his serious impairments, made it to the courthouse door seven times, six times before the earliest possible expiration date of the federal limitation period.  This constitutes an extraordinary circumstance that prevented Davis from timely pursuing federal habeas relief, leading to attacks of untimeliness on his current petition.  The current federal petition was the first counseled petition Davis filed, and he was thus finally able to effectively present neuropsychological evidence detailing his cognitive impairments and multiple mental health issues.

30. The Court's repeated errors, in conjunction with Davis' documented cognitive impairments and mental health conditions, constitute an extraordinary circumstance. It would have been difficult for an unimpaired petitioner to successfully navigate the procedural gauntlet created by the Court's multiple errors. It was impossible for Davis to do so with his cognitive impairments and mental health issues. To do so would have required comprehension, abstract reasoning, memory retention over the course of a complex multifaceted task spread out over time, and executive function and capabilities that Davis simply does not possess.

31. In this regard the Court further finds in accordance with the two-part test set forth in Bills v. Clark, 628 F.3d 1092, 1099-1100 (9th Cir. 2010), that Davis' cognitive impairments and mental health issues were so severe that: (a) Davis was unable rationally or factually to personally understand the need to timely file on a consistent and effective basis, and (b) Davis was diligent in pursuing his claims to the extent that he could understand the claims and the process, but his cognitive impairments and mental health issues made it impossible to meet the filing deadline under the totality of the circumstances, including available access to assistance and the formidable barriers to pursuing his rights presented by this Court's multiple erroneous dismissals.

32. To the extent that Davis had access to lay inmate assistance at one time or another, such assistance was not sufficient to enable him to overcome the combined effect of his mental impairments and this Court's multiple errors. As Dr. Jones-Forrester persuasively testified, while Davis required assistance with his borderline intellectual functioning and neurocognitive difficulties, whether he could understand and apply that assistance effectively was entirely another matter. The Court thus is not persuaded on the record presented that merely because isolated state and federal filings reference another inmate, that Davis after diligent effort was consistently and effectively able to obtain adequate assistance in prison notwithstanding his cognitive and mental health issues. The oft-heard refrain that "He could have filed timely because other inmates

1  [untrained in either law or mental health] helped or could help him" is not persuasive in

2  light of the record in this case, including Dr. Jones-Forrester's testimony.[4]

3  　　　33.  Davis indisputably showed diligence in the face of both his impairments and

4  this Court's repeated mishandling of his case—by continuing for years to pursue his rights

5  in both federal and state court.  Davis' multiple deficient filings in state and federal court

6  over the years reflect only continued diligence in spite of his cognitive impairments and

7  mental health issues, not a consistent capability to timely and effectively seek judicial

8  relief.

9  　　　　　　　　　　　　　　　CONCLUSIONS OF LAW

10  　　　1.  The Court has jurisdiction over the subject matter under 28 U.S.C. § 2254(a).

11  　　　2.  At the outset, the federal limitation period under 28 U.S.C. § 2244(d) has not

12  yet expired in this matter.  Proceedings remain pending in the state district court that

13  continue to statutorily toll the limitation period under § 2244(d)(2), such that the limitation

14  period has not yet begun to run.[5]

15  　　　As detailed in Finding No. 9, Davis filed several proceedings challenging his

16  conviction and/or the duration of his sentence prior to or during his direct appeal; and the

17  state district court ultimately took the matter off calendar without definitively acting on all

18  of the multiple filings.  Under Nevada state procedural law, taking a matter off calendar

19  does not constitute a disposition of a filing.  See e.g., Gibson v. Gibson, No. 68467, 2016

---

20  　　　[4] Accordingly, on the record presented, another inmate who not only was not a trained attorney but

21  also was not a trained mental health professional would not necessarily be able to effectively assist an
inmate with Davis' combined cognitive and mental health issues.  Adequate assistance of such a litigant in

22  a represented setting arguably would require the combined efforts of two highly trained practitioners both
bringing their respective expertise to bear.  Nothing in the record before this Court in this case reflects that

23  Davis was able through diligent effort to find what would have been an exceedingly impressive inmate who
could effectively assist him given his combined legal and mental health needs and issues -- overcoming

24  the inability testified to by Dr. Jones-Forrester to consistently and effectively understand, follow, and apply
even otherwise perhaps adequate assistance.  The key issue is whether possibly available assistance

25  would have helped Davis, with his cognitive impairments and mental health conditions, not inmates
generally in the abstract.  The Court finds based on the record presented that the possibly available

26  assistance was not sufficient to overcome his limitations.

27  　　　[5] § 2244(d)(2) provides that "The time during which a properly filed application for State post-
conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be

28  counted toward any period of limitation under this subsection."

WL 2956348, at *1 (Nev. May 18, 2006).[6]  A matter taken off calendar in the state court remains pending for purposes of § 2244(d)(2) where the petitioner has sought to pursue his rights through the proper use of state court procedures.  See Brown v. Poole, 337 F.3d 1155, 1158-59 (9th Cir. 2003).  As reflected by the factual findings herein, nothing in the record in this matter reflects that Davis, with his cognitive impairments and mental health issues, has sought to use state court procedures improperly. He continually has maintained that he wished to continue to challenge his conviction and sentence despite the actions of appointed counsel.  Indeed, as the findings and incorporated filing reflect, Davis did continue to challenge his conviction and sentence in both state and federal court within only months after the matter was taken off calendar in state court.  If the state courts thereafter failed to definitively resolve all of Davis' previously filed challenges, it certainly was not at Davis' behest.

Accordingly, the Court holds in the first instance that the federal limitation period has not yet expired because several state court proceedings challenging Davis' conviction and/or sentence remain pending without a final disposition in the state courts.  These pending proceedings continue to statutorily toll the federal limitation period under § 2244(d)(2), thus without any time having yet elapsed in the one-year limitation period.[7]

_____

[6] See also ECF No. 75 at 5 n.5 (listing additional Nevada authorities cited on this point).

[7] While this Court's holding perhaps is a technical one, the state court nonetheless has more capability than does the impaired Davis to monitor its docket and ensure that all matters filed are definitively resolved.  The situation presented in this case is analogous to situations where a federal district court may administratively close an action without entering final judgment.  While administrative closure may be both warranted and efficient in many circumstances, an administrative closure without entry of judgment leaves the action subject to being reopened simply as an interlocutory matter without satisfying the more stringent requirements of Rule 60(b) of the Federal Rules of Civil Procedure.  In both state and federal systems, the onus ultimately remains on the district court to assure that a matter is definitively concluded if it is the court's intention that the case may not later be reopened as a still-pending matter.

Respondents posit that any off-calendar matters filed after May 27, 2005, would have been untimely under the state one-year limitations period.  However, all of the matters referenced in Finding No. 9 were filed before this date.  Moreover, Respondents' suggested May 27, 2005, expiration date of the state limitation period appears to be incorrect.  Respondents maintain without supporting citation that because Davis later "voluntarily" dismissed his direct appeal the state limitations period would expire one year after the expiration of the thirty-day period to appeal the April 27, 2004, original judgment of conviction. (ECF No. 90 at 6-7.) However, the Supreme Court of Nevada stated that the state one-year limitations period would start running from the date of its December 16, 2004, order dismissing Davis' appeal. (ECF No. 31-19 at 2 n.1.)  The state Supreme Court is the final arbiter of Nevada state law, and most certainly as applied to Davis' case in particular.  It thus would appear that the state limitations period did not expire until

3.   If the federal limitation period nonetheless ran despite the off-calendar state proceedings referenced in Conclusion No. 2, then the limitation period, absent additional equitable tolling, would expire on June 9, 2009.  The Court incorporates, as if set forth herein *in extenso*, its provisional calculation of the federal limitation period that is set forth in the evidentiary hearing order (ECF No. 75 at 1-5) including all footnotes.  The parties do not substantially dispute – subject to the impact of matters that were taken off calendar or otherwise unresolved in the state courts – the accuracy of the June 9, 2009, provisional putative expiration date of the federal limitation period absent additional tolling, delayed accrual, or some other basis to overcome the federal time bar.  (See ECF No. 89 at 3; ECF No. 90 at 2.)  Absent statutory tolling as applied in Conclusion No. 2 or equitable tolling as discussed below, the limitation period would expire on June 9, 2009.

4.   As detailed in Finding Nos. 12 through 20, this Court erroneously dismissed timely petitions in Nos. 3:04-cv-00374, 3:04-cv-00499, and 3:04-cv-00528 for failure to file compliant papers in response to screening orders notwithstanding the presence of substantially compliant papers in No. 04-cv-00606 at the time of the dismissals in the three earlier actions.  When a *pro se* petition is docketed as a new action while a prior petition is still pending, the rule that *pro se* pleadings should be liberally construed mandates that the later filing be considered as a potential filing in the earlier pending action.  See e.g., Woods v. Carey, 525 F.3d 886, 889-90  (9th Cir. 2008) (in successive petition context).[8]  The Court did not so construe the substantially compliant papers that were docketed instead in No. 3:04-cv-00606, which was pending at the time of the dismissal in each of the above three cases, to avoid prejudice to the petitioner.

5.   As detailed in Finding Nos. 12, 18-19, and 22-23, the Court erroneously applied the PLRA's three-strikes provision in 28 U.S.C. § 1915(g) to Davis' habeas petitions in Nos. 3:04-cv-00528 and 3:04-cv-00606.

---

December 16, 2005.  In all events, all of the proceedings referenced in Finding No. 9 were filed prior to Respondents' suggested earlier expiration date as well.

[8] While Woods itself was decided after the dismissals, the decision did not overrule any prior binding circuit precedent and was based upon prior law regarding liberal construction of *pro se* pleadings.  Woods thus reflects the Ninth Circuit's appraisal of what the law was at the time relevant here.

This application of § 1915(g) to Davis' habeas petitions clearly contradicted the then-existing Ninth Circuit precedent in Naddi v. Hill, 106 F.3d 275 (9th Cir. 1997).  The Court incorporates its discussion of Naddi from the evidentiary hearing order (ECF No. 75 at 11-13) as if set forth herein *in extenso*.  Even if there had been any doubt on this point, which there was not, the Ninth Circuit held only months after the dismissals of these two actions that § 1915(g) was not applicable to habeas actions.  See Andrews v. King, 398 F.3d 1113, 1122-23 (9th Cir. 2005).  This holding stated the law as it existed at the time of the Court's action in Nos. 3:04-cv-00528 and 3:04-cv-00606.

As a result of this erroneous application of the PLRA's three-strikes provision to the two habeas actions, the Court erroneously dismissed No. 3:04-cv-00606 under § 1915(g). Furthermore, in No. 3:04-cv-00528, the Court erroneously relied upon § 1915(g) to threaten Davis that his ability to seek habeas relief would be "virtually eliminated" under the three-strikes provision. Thus, in the two actions collectively, the Court affirmatively misled Davis that the three-strikes provision applied to his habeas cases, that he ultimately had "struck out," that he thereafter would not be able to pursue habeas relief as a pauper without showing an imminent danger of serious physical injury, and that his ability to seek habeas relief thus would be "virtually eliminated."  Such admonishments regarding the three-strikes provision are intended by design to discourage, deter, and impede an inmate from seeking further federal judicial relief.

6. As detailed in Findings Nos. 24-28, the Court thereafter failed to correct its prior erroneous dismissals when Davis nonetheless filed further federal petitions, including two petitions filed prior to the earliest possible expiration date of the federal limitation period on June 9, 2009.

As is discussed further, *infra*, a district court has the equitable power to accept a later-filed petition as filed *nunc pro tunc* on the filing date of an earlier petition that was dismissed improperly.  See Anthony v. Cambra, 236 F.3d 568, 574 (9th Cir. 2000).  A district court's failure to expressly consider whether to exercise its equitable power to

1   correct earlier errors may require a remand for the exercise of such discretion.  See Hung
2   Viet Vu v. Kirkland, No. 09-15299, 2010 WL 24215, at *2 (9th Cir. Dec. 10, 2010).

3          This Court did not expressly consider exercising its equitable power to correct its
4   prior errors when Davis filed petitions in 2005, 2007, and 2010.  The 2005 petition was
5   filed within months of both the prior four erroneous dismissals and the intervening
6   decision in Andrews specifically holding that the PLRA's three-strikes provision was
7   inapplicable to habeas actions.  The 2007 petition further put the Court on notice that
8   Davis had documented mental health issues.   That factor typically leads to the
9   appointment of counsel to assure that a petitioner's claims and arguments, such as those
10  concerning prior dismissals, can be adequately presented.  The 2010 petition was filed
11  after the possible expiration date of the federal limitation period, such that the failure to
12  expressly consider correcting the multiple prior erroneous dismissals was even more
13  critical in that action.

14         The Court thus compounded and perpetuated its prior erroneous dismissals and
15  misleading advisements by continuing to dismiss later actions by the cognitively impaired
16  petitioner with multiple mental health issues, without expressly considering whether to
17  exercise its equitable discretion to correct the prior errors.

18         7.  At the time of all prior federal dismissals discussed herein, Davis had exhausted
19  claims that could be asserted to preclude a dismissal without prejudice for complete lack
20  of exhaustion.  Pursuant to Chambers v. McDaniel, 549 F.3d 1191, 1195-99 (9th Cir.
21  2008), the state Supreme Court's August 23, 2004, order (ECF No. 31-10) denying an
22  original petition by Davis (ECF No. 31-5) exhausted the claims therein. Moreover, even a
23  wholly unexhausted petition potentially may be stayed rather than dismissed.  See Mena
24  v. Long, 813 F.3d 907 (9th Cir. 2016).[9]

25         8.  Accordingly, given Finding Nos. 2 through 6 and 11 through 33 and Conclusion
26  Nos. 4 through 7, the Court holds that even if the federal limitation period has expired,

27

28         [9] While Chambers and Mena were decided in 2008 and 2016 respectively, the decisions did not
overrule any prior decisions that the panels regarded as binding circuit precedent.  The decisions thus
reflect the Ninth Circuit's appraisal of the existing law at the times relevant herein.

David is entitled to equitable tolling continuously through the filing of counseled pleadings herein.

When the Supreme Court held that equitable tolling is available to overcome the limitation period in § 2244(d), the Court observed that "we have followed a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity." Holland v. Florida, 560 U.S. 631, 650 (2010) (internal quotations omitted).   A petitioner accordingly is entitled to equitable tolling if he can establish that (1) he was pursuing his rights diligently, but (2) some extraordinary circumstance beyond his control stood in his way, such that it was impossible to file a timely petition and the extraordinary circumstance was the cause of the untimeliness. Rudin v. Myles, 781 F.3d 1043, 1054-55 (9th Cir. 2014) (citation omitted).   A petitioner bears a heavy burden to show that he is entitled to equitable tolling, "lest the exceptions" to the timeliness requirement "swallow the rule."   Id. at 1055 (internal quotation omitted). However, the grounds for granting equitable tolling also are highly fact-dependent, id., and the equitable doctrine is to be applied flexibly on a case-by-case basis, eschewing mechanical rules, Holland, 560 U.S. at 649-50.   As the Ninth Circuit observed in Rudin, "At bottom, the purpose of equitable tolling is to 'soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having [his] day in court.'" 781 F.3d at 1055 (quoting United States v. Buckles, 647 F.3d 883, 891 (9th Cir. 2011)).

To establish in isolation a basis for equitable tolling due to mental impairment, the petitioner must show:

> (1) First, [that] his mental impairment was an 'extraordinary circumstance' beyond his control by demonstrating that the impairment was so severe that either
> > (a) [he] was unable rationally or factually to personally understand the need to timely file, or
> > (b) [his] mental state rendered him unable personally to prepare a habeas petition and effectuate its filing; [and]

(2) Second, [that he was diligent] in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

Bills v. Clark, 628 F.3d at 1099-1100.

Davis is entitled to equitable tolling under these general and specific standards on the facts presented in this case.  Prior to this action, this Court in error turned away seven petitions presented by the cognitively impaired inmate with multiple mental health conditions, including six indisputably timely petitions.  The Court through its errors put Davis through a procedural gauntlet that even an unimpaired petitioner would have had difficulty navigating successfully.  It was difficult enough for Davis to timely and effectively seek federal habeas relief with his impairments.  However, when by chance he did present timely and substantially compliant papers, the Court dismissed his action in error and then kept dismissing his actions thereafter without correcting its prior mistakes.  It was impossible for the impaired Davis to overcome the Court's errors, as he lacked the consistent functional capacity to do so either in this Court or on appeal.  In conjunction with Davis' cognitive impairments and mental health conditions, this Court's repeated erroneous dismissals of timely petitions constituted an extraordinary circumstance that prevented Davis from timely pursuing federal habeas relief, leading to attacks of untimeliness on the current petition.

Regarding the two-part test elucidated in Bills, the Court notes at the outset that this case is not one where the petitioner's multiple mental impairments constituted the only extraordinary circumstance preventing timely pursuit of federal habeas relief.  The Court has further found that Davis was unable rationally or factually to personally understand the need to timely file on a consistent and effective basis and that he was diligent in pursuing his claims to the extent that he could understand the claims and the process.  His cognitive impairments and mental health issues made it impossible for him to timely pursue federal habeas relief under the totality of the circumstances, including

the assistance available to him, and significantly, the formidable barriers to pursuit of his rights presented by this Court's multiple erroneous dismissals.  As the Court has found, Davis unquestioningly demonstrated diligence in the face of both his impairments and the Court's repeated mishandling of his cases.[10]

Accordingly, even if the federal limitation period has expired, Davis is entitled to equitable tolling of the federal limitation period through to the filing of counseled pleadings herein.  This Court has a fundamental obligation not to improperly bar the doors to justice by its actions, particularly where its errors adversely impact an impaired petitioner.  Its failure in this regard must be considered to determine whether equity demands relief from "the harsh impact of technical rules which might otherwise prevent a good faith litigant from having his day in court."  On the facts presented, Davis is owed his day in court.

9.  The Court further exercises its equitable power to accept the pleadings filed in this matter as filed *nunc pro tunc* as of the time of the prior timely federal petitions, to remedy the Court's erroneous dismissals of multiple prior actions.

As noted *supra*, a district court has the equitable power to accept a later-filed petition as filed *nunc pro tunc* on the filing date of an earlier petition that was dismissed improperly.  See Anthony, 236 F.3d at 574. A district court considering whether to exercise this equitable power should examine the totality of all relevant factors in deciding how to exercise its discretion. Hung Viet Vu, at *3. A nonexhaustive list of potentially relevant factors includes the Court's prior clear errors, Davis' status as a *pro se* petitioner during the relevant periods, the public policy favoring disposition of cases on their merits, the necessity of relief to avoid a harsh result and injustice given the potential merit of the claims presented, and the potentially countervailing considerations of comity, federalism

---

[10] Respondents urge that the Court may examine Davis' actions or inactions only while the federal limitation period allegedly was running from after June 9, 2008, through June 9, 2009.  (ECF No. 90 at 5.) Respondents cite no case authority supporting this assertion.  See id. Equitable tolling instead is a fact-intensive inquiry that turns upon the totality of the circumstances. Holland, 560 U.S. at 649-50; Bills, 628 F.3d at 1096-99.  Circumstances occurring prior to the running of the limitation period, including cognitive impairments and mental health issues as well as other factors such as this Court's actions, may unquestionably impact a petitioner's ability to timely pursue federal habeas relief prior to the expiration of the limitation period.

1 and finality that the Antiterrorism and Effective Death Penalty Act (AEDPA) was intended

2 to promote.  Id.

3      In consideration of these factors, the Court finds and concludes on the record

4 presented that exercise of its equitable power to accept the pleadings in this action as

5 filed *nunc pro tunc* at the time of the prior improperly dismissed actions is in the interests

6 of justice.  The Court clearly erred in its handling of the 2004 cases, especially in No. 04-

7 00606, and those errors were furthered when the Court thereafter failed to remedy them

8 and instead dismissed subsequent actions in 2005, 2007, and again in 2010.  The

9 interests of justice thus require remediation not only of the Court's clear errors in

10 dismissing the four actions filed in 2004, but also of the Court's repeated failure to remedy

11 those errors thereafter, including after the Court was placed on notice that Davis had

12 documented mental health issues.  The cognitively impaired petitioner with multiple

13 mental health issues was not able to capably challenge the Court's prior errors

14 proceeding *pro se*, although he diligently sought to pursue his rights to the best of his

15 ability.  It was not until counsel was appointed in this action that Davis could effectively

16 make the full extent of his cognitive impairments and mental health issues known.

17 Moreover, while the Court makes no definitive ruling on the merits at this juncture, Davis'

18 claims, which also are largely premised on his cognitive impairments and mental health

19 issues, have potential merit.  Exercise of the Court's equitable power to remedy its prior

20 clear errors is warranted to avoid the harsh result and injustice of such claims never being

21 considered on the merits, despite Davis' diligent and unceasing efforts in the face of his

22 serious impairments.  On the record presented, the necessity to do justice herein clearly

23 outweighs the countervailing systemic concerns as to comity, federalism, and finality.

24      The Court accordingly will accept the pleadings filed herein as filed *nunc pro tunc*

25 at the time of Davis' earlier petitions filed prior to the earliest possible expiration date of

26 the federal limitation period on June 9, 2009.

27      While some prior authorities suggest that remedial relief may be appropriately

28 sought in the action in which the error occurred pursuant to Rule 60(b), equity is best

served in this instance by proceeding forward in this action rather than remitting Davis to seek relief in one or more of the prior actions.   The Court is seeking to remedy not one error in one prior action but instead multiple compounded errors in multiple prior actions. Both equity and judicial efficiency are best served in this instance by simply proceeding in the current action, following upon the Court's conclusion that exercise of its equitable power is warranted under the standards reflected by governing law.

Further, to the extent that relation back under Rule 15 is required, the Court concludes that the claims in the pleadings in this matter relate back to the timely pleadings in No. 07-cv-01693-PMP-RJJ (ECF No. 1 at 8-12, 22-24, 26-27).

10.  To the extent, if any, that Respondents have any continuing extant objection to the admissibility of the prior psychiatric center and educational records, the objection is overruled.  The Court is satisfied that the records have been sufficiently authenticated and that any absence of underlying materials summarized in reports therein do not make the summarizing reports and records inadmissible on their face.  The records otherwise are admissible over a hearsay objection under subparagraphs (4), (6) and/or (8) of Rule 803 of the Federal Rules of Evidence. Moreover, the materials clearly comprise the kind of information that a neuropsychologist and forensic psychologist such as Dr. Jones-Forrester might reasonably rely upon, and thus her opinion's basis on those materials is admissible under Rule 703 of the Federal Rules of Evidence.

11.  For the foregoing reasons, the Court holds that this action is not subject to dismissal for untimeliness.

If any of the foregoing findings of fact is considered to be a conclusion of law, or vice versa, it is the Court's intention that it be so considered.

**IT IS THEREFORE ORDERED** that Respondents' Motion to Dismiss (ECF No. 50), which previously was provisionally dismissed without prejudice, is **DENIED**.

**IT IS FURTHER ORDERED** that Respondents shall file an Answer to the Petition, as amended, within sixty (60) days of entry of this Order and that Petitioner may file a Reply within thirty (30) days of service of the Answer.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Leave to File a Supplemental Brief (ECF No. 92) is **GRANTED** and the Clerk of Court shall file the brief attached with the motion.

DATED: July 15, 2020.

_____
RICHARD F. BOULWARE, II
United States District Judge